UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

**NICHOLAS FANTINI,**

    *Plaintiff*,

v.

**WESTROCK COMPANY,** *et al.*,

    *Defendants*.

No. 22-cv-04351

**OPINION**

---

**APPEARANCES:**

**Nicholas Fantini**
P.O. Box 83
Norwood, PA 19074

    *Pro Se Plaintiff*

**Iman Ahsia Wells**
**Jesse Samuel Grasty**
**Suzanne M. Cerra**
NUKK-FREEMAN & CERRA
26 Main Street, Suite 202
Chatham, NJ 07928

    *On behalf of Defendants*

**O'HEARN, District Judge.**

## INTRODUCTION

This matter comes before the Court upon the motion for summary judgment filed by Defendants WestRock Services, LLC[1] ("WestRock"), Howard Braverman, Kathy Griess, George Melvin, Tonya Chitwood, Jill Horner, Vicki Lostetter, and Steven Voorhees ("Individual Defendants," and together with WestRock, "Defendants"), (ECF No. 148), as well as the cross-motion for summary judgment filed by Plaintiff Nicholas Fantini ("Plaintiff" or "Fantini"), (ECF No. 157). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons set forth below, Defendants' Motion, (ECF No. 148), is **GRANTED**, and Plaintiff's Motion, (ECF No. 157), is **DENIED**.

## I. BACKGROUND

WestRock is a packaging manufacturing and recycling company. (Defs.' SOMF, ECF No. 148-2 at ¶ 1).[2] WestRock hired Fantini as a part-time Design Assistant in February 2008 and eventually promoted him to a full-time Design Support Coordinator role in early 2012. (Defs.' Resp. to Pl.'s SOMF (hereinafter "Defs.' RSOMF"), ECF No. 158-1 at ¶¶ 1–3). Throughout his

---

[1] WestRock Services, LLC is improperly named on the docket as "WestRock Company" because the original Complaint so named it. (*See generally* ECF No. 1-1). Plaintiff's Amended Complaint correctly identifies WestRock Services, LLC, and the Court refers to the entity accordingly. (*See* ECF No. 60 at 6 (asserting claims against "WestRock Services, LLC ([i]mproperly named in the complaint as Westrock Company . . . .")).

[2] Plaintiff's Responsive Statement of Material Fact ("RSOMF"), (ECF No. 157-2), does not comply with Local Civil Rule 56.1. Although Plaintiff's RSOMF responds to many of the facts in Defendants' SOMF, (ECF No. 148-2), it frequently consolidates or summarizes multiple factual assertions rather than responding to each paragraph individually. The Court will consider, and cite to, Plaintiff's RSOMF where it sets forth a proper response that clearly and directly addresses the facts set forth in Defendants' SOMF. However, "any material fact not disputed [by the Plaintiff's RSOMF] shall be deemed undisputed," L. Civ. R. 56.1, and thus citation to Defendants' SOMF is made for facts deemed admitted by virtue of Plaintiff's noncompliance with Local Rule 56.1.

employment, Fantini was primarily supervised by Defendant Howard Braverman ("Braverman"), who managed WestRock's Marlton, New Jersey facility. (*Id.* at ¶ 5; Defs.' SOMF, ECF No. 148-2 at ¶ 21). Individual Defendants Kathy Griess ("Griess"), Tonya Chitwood ("Chitwood"), Jill Horner ("Horner"), George Melvin ("Melvin"), and Vicki Lostetter ("Lostetter") are all current or former WestRock human resources employees, and Steven Voorhees ("Voorhees") is WestRock's former Chief Executive Officer. (Defs.' SOMF, ECF No. 148-2 at ¶¶ 3–7, 54).

Beginning sometime in 2018, Fantini expressed dissatisfaction with the Design Support Coordinator position and sought different roles within WestRock, including further promotion to a Designer position. (*Id.* at ¶¶ 31–32). He was ultimately not selected for any new role. (*Id.* at ¶¶ 31–35).

In September 2019, Fantini contacted WestRock's compliance "hotline" and lodged a formal complaint related to issues involving compensation, work conditions, limited growth opportunities, Braverman's inappropriate conduct and favoritism, and an incident where Griess yelled at him during a meeting. (*Id.* at ¶ 65). It is disputed whether the hotline complaint also included allegations of gender-based discrimination or hostility and it is further disputed as to whether Chitwood's investigation of the hotline complaint—which found Fantini's allegations unsubstantiated—was adequate. (Pl.'s RSOMF, ECF No. 157-2 at ¶¶ 65–69).

Fantini's last working day at WestRock was October 1, 2019. (*Id.* at ¶ 71). He thereafter commenced an approved period of leave under the Family and Medical Leave Act ("FMLA"). (*Id.* at ¶¶ 71–74). While on FMLA leave, Fantini exchanged emails with several of the Individual Defendants regarding accommodation paperwork, a job description he claims was inaccurate, and broader workplace concerns. (Defs.' SOMF, ECF No. 148-2 at ¶¶ 75–83). Several of the Individual Defendants worked with Fantini to address these issues during his leave. (*See id.* at ¶¶ 75–92).

On February 3, 2020, Horner emailed Fantini to set a deadline for him to provide necessary return-to-work documentation, making clear that his failure to do so by February 10 could result in his termination. (Pl.'s RSOMF, ECF No. 157-2 at ¶ 92). The next day, Fantini appeared unannounced at the Marlton WestRock facility, where Melvin met and instructed him not to appear in-person until he was medically cleared. (Defs.' SOMF, ECF No. 148-2 at ¶¶ 93–94). On February 11, 2020, Fantini emailed several members of WestRock management a photograph of himself holding a sign stating "I have been Mistreated and I am Mad[ . . . .]" and sitting next to a doll with an object which the WestRock recipients interpreted to resemble an explosive device. (*Id.* at ¶¶ 106–114). After the incident, WestRock implemented additional security and again directed Fantini not to return to work until cleared to do so. (Pl.'s RSOMF, ECF No. 157-2 at ¶¶ 113–114). WestRock also required Fantini to undergo a remotely conducted independent medical examination ("IME") through its third-party provider, Sedgwick, before returning to work. (*Id.* at ¶¶ 116–118). Fantini never completed the IME. (*Id.* at ¶ 120).

WestRock terminated Fantini's employment on April 22, 2020, citing the February 11 email as a violation of its Workplace Violence Policy, and his refusal to participate in the IME. (Defs.' SOMF, ECF No. 148-2 at ¶¶ 16–18, 121–123). Prior to his termination, Defendants' last communication with Fantini was April 11, 2020. (*See* Pl.'s Ex. A, ECF No. 157-3 at 12).

## II.    PROCEDURAL HISTORY

Plaintiff never filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), the New Jersey Division on Civil Rights, or any other agency before bringing this lawsuit. (Defs.' SOMF, ECF No. 148-2 at ¶¶ 132–133). He filed a complaint in New Jersey Superior Court on April 18, 2022. (Notice of Removal, ECF No. 1). Defendants timely removed the action to this Court on June 30, 2022. (*Id.*). Plaintiff filed the operative Amended

Complaint on March 31, 2023. (ECF No. 60). The Amended Complaint alleges four counts: Count I alleges common law wrongful termination; Count II alleges gender discrimination and hostile work environment under the Title VII and "New Jersey State Law";[3] Count III alleges common law workplace negligence; and Count IV alleges negligent misrepresentation. (*Id.* at ¶¶ 33–72). Defendants moved for summary judgment on all Counts. (Defs.' Mot., ECF No. 148). Plaintiff cross-moved for summary judgment on "his claims for (1) unlawful termination in violation of public policy; (2) retaliation for engaging in protected activity; and (3) negligent misrepresentation."[4] (Pl.'s Cross-Mot., ECF No. 157 at 1).

### III. LEGAL STANDARD

Courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When the Court considers the

---

[3] Plaintiff does not specify which "New Jersey State Law" Count II is brought under. Defendants interpret Count II to be brought pursuant to the New Jersey Law Against Discrimination ("NJLAD"), (Defs.' Br., ECF No. 148-1 at 1 n.1), and Plaintiff does not contest this interpretation, (*see* Pl.'s Reply Br., ECF No. 166 at 13 (seeking damages for violation of the NJLAD)). The Court accordingly construes Count II as brought under the NJLAD.

[4] The Court construes Plaintiff's Cross-Motion to seek summary judgment only as to his "unlawful termination" claims (Counts I and II) and his negligent misrepresentation claim (Count IV). Plaintiff does not seek summary judgment as to his workplace negligence claim (Count III). Further, the Amended Complaint does not plead any retaliation claim—under Title VII, the NJLAD, the Americans with Disabilities Act, or otherwise—despite Plaintiff's briefing suggesting such a claim exists in this case. (*See* ECF No. 157 at 5–6 (seeking summary judgment on a retaliation theory under "Title VII, the ADA, and analogous state laws"); *see also* ECF No. 60 at 8–9 (asserting Title VII and NJLAD claims)). "Because parties may not raise claims or causes of action for the first time in briefs opposing summary judgment, the Court rejects [Plaintiff's] attempt to do so now." *Lawshe v. Squeri*, No. 03-3506, 2010 WL 276232, at *7 (D.N.J. Jan. 19, 2010).

evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346 (quoting *Anderson*, 477 U.S. at 255).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 252). The non-moving party, however, must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

## IV. ANALYSIS

Defendants move for summary judgment on each of Fantini's claims. Fantini cross-moves for summary judgment only as to Counts I, II, and IV of his Amended Complaint. *See supra* n.4. For the reasons set forth below, Defendants' Motion is granted. Fantini's Cross-Motion is accordingly denied.[5]

### A. Count I is Preempted by the NJLAD

Count I alleges a common law claim for wrongful termination under *Pierce v. Ortho Pharma Corp.*, 417 A.2d 505 (N.J. 1980). (Am. Compl., ECF No. 60 at ¶¶ 33–42). *Pierce*

---

[5] While some of the procedural deficiencies in Plaintiff's *pro se* submissions may be excused, (*see* Defs.' Reply Br., ECF No. 158 at 3–10 (identifying defects in Plaintiff's filings)), the Court cannot ignore Plaintiff's citation to what appears to be non-existent case law, (*see* Pl.'s Cross-Mot., ECF No. 157 at 7 (citing *Pruco Life Ins. Co. of New Jersey v. Carrasco*, 2022 WL 1210718 (D.N.J. Apr. 25, 2025)), which, despite the Court's diligent search, does not appear to exist)). The Court reminds Plaintiff that an "unrepresented party" is still subject to Rule 11 and may be sanctioned for failing to conduct a "reasonable inquiry" into whether "the claims, defenses, and other legal contentions are warranted by existing law." FED. R. CIV. P. 11(b)–(c); *see also Powhatan Cnty. Sch. Bd. v. Skinger*, No. 24-874, 2025 WL 1559593, at *10 (E.D. Va. June 2, 2025) (collecting cases) ("Courts have also routinely threatened to impose sanctions on litigants proceeding *pro se* who cite AI-hallucinated or otherwise nonexistent legal authority to support their positions.").

recognized a cause of action for terminated at-will employees whose discharge violates "a clear mandate of public policy." 417 A.2d at 512. Sources of public policy include "legislation; administrative rules, regulations or decisions; and judicial decisions." *Id.* However, "New Jersey courts and courts interpreting New Jersey law have held that common law claims for wrongful discharge in violation of public policy are preempted when a statutory remedy under the NJLAD exists." *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 567 (D.N.J. 2000) (collecting cases). Accordingly, "a common law claim for wrongful termination is not viable insofar as it seeks the same remedy available under the NJLAD." *Kapossy v. McGraw–Hill, Inc.,* 921 F. Supp. 234, 249 (D.N.J.1996) (citing *Catalane v. Gilian Instrument Corp.,* 638 A.2d 1341, 1348–49 (N.J. Super. Ct. App. Div. 1994)).

Here, Fantini argues his termination violated the "clear public polic[ies]" of "protecting employees from discrimination, retaliation, and unfair treatment . . . ." (Pl.'s Reply Br., ECF No. 166 at 8). These policies are precisely reflected in the NJLAD. *See Shaner v. Horizon Bancorp.*, 561 A.2d 1130, 1131 (N.J. 1989) ("'The clear public policy of this State,' reflected in the [NJ]LAD, 'is to abolish discrimination in the workplace.'" (quoting *Fuchilla v. Layman,* 537 A.2d 652, 660 (N.J. 1988))); *see also Bosshard v. Hackensack Univ. Med. Ctr.*, 783 A.2d 731, 738 (N.J. Super. Ct. App. Div. 2001) (dismissing *Pierce* claim "because it does not seek to vindicate interests independent of those protected by the [NJ]LAD"). Thus, because Fantini's "common law causes of action may not go to the jury when a statutory remedy under the [NJ]LAD exists," *Catalane*, 638 A.2d at 1349, Fantini's Count I *Pierce* claim fails as a matter of law.

Therefore, Defendants' Motion for summary judgment as to Count I is granted, and Plaintiff's Cross-Motion is denied.

B. **Count II Fails as a Matter of Law**

Count II asserts hostile work environment and reverse gender discrimination claims under both Title VII and the NJLAD.

### 1. Plaintiff's Title VII Claims Are Barred Due to the Failure to Exhaust Administrative Remedies

It is well-settled that a plaintiff must file a charge with the EEOC and obtain a "right-to-sue" letter before bringing Title VII claims in federal court. *See Webb v. City of Phila.*, 562 F.3d 256, 262–63 (3d Cir. 2009). Though this preliminary exhaustion requirement is "to be interpreted in a nontechnical fashion," a plaintiff "is not permitted to bypass the administrative process" altogether. *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398 (3d Cir. 1976). Summary judgment is appropriate if a plaintiff fails to exhaust, *Campfield v. N.J. Transit*, No. 19-19794, 2023 WL 6387271, at *6 (D.N.J. Sept. 29, 2023), unless there are factual disputes related to equitable exceptions that might excuse the failure to first seek administrative remedies, *see Story v. Mechling*, 214 F. App'x 161, 163 (3d Cir. 2007) (affirming summary judgment where plaintiff failed to provide any evidence "excusing his failure to exhaust").

Here, it is undisputed that Fantini did not file a charge with the EEOC and thus did not exhaust his administrative remedies. (Defs.' SOMF, ECF No. 148-2 at ¶ 132). Fantini argues instead that there are disputed facts related to the applicability of equitable exceptions because "he attempted to initiate a charge, including communications with EEOC staff and submission of preliminary information, but procedural obstacles prevented formal filing." (Pl.'s Reply Br., ECF No. 166 at 5 (citing "DOMF ¶132")). To the extent these facts exist in the record,[6] they are

---

[6] The Court interprets Plaintiff's reference to "DOMF ¶132" to point to ECF No. 157-2. But ECF No. 157-2 contains no paragraph numbered 132, and neither that document nor Plaintiff's own SOMF in support of his Cross-Motion, (ECF No. 157-1), otherwise contain any facts related to attempts to file an administrative charge of discrimination.

insufficient to create a factual dispute as to the applicability of any equitable exception to the exhaustion requirement. *See Robinson v. Consol Pa. Coal Co. LLC*, 425 F. Supp. 3d 433, 443–444 (W.D. Pa. 2019) (finding plaintiff's oral communications with an EEOC investigator which failed to result in a right-to-sue letter, even if admissible, "does not excuse a total failure to file the required documents with the EEOC."). It is therefore undisputed that Fantini did not exhaust his administrative remedies prior to filing suit under Title VII. Thus, Plaintiff's Title VII claims are barred.

Defendants' Motion is therefore granted as to Fantini's Title VII claims and Fantini's Cross-Motion is denied.

**2. Plaintiff's NJLAD Hostile Work Environment and "Favoritism" Claims are Time-Barred, and His NJLAD Discriminatory Termination Claim Fails as a Matter of Law**

The NJLAD carries a two-year statute of limitations, such that a plaintiff must sue within two years of a discriminatory act. *See, e.g.*, *Rodriguez v. Raymours Furniture Co., Inc.*, 138 A.3d 528, 537 (N.J. 2016). For hostile work environment claims, where a plaintiff alleges a "continual, cumulative pattern" of wrongful conduct, the clock does not start until the last wrongful conduct stops. *Toto v. Princeton Twp.*, 962 A.2d 1150, 1155 (N.J. Super. Ct. App. Div. 2009) (quoting *Wilson v. Wal-Mart Stores*, 729 A.2d 1006, 1010 (N.J. 1999)). For claims based on discrete acts—like termination—the limitations period starts on the date of the last discriminatory event. *Clark v. Dep't of L. & Pub. Safety*, No. 19-21238, 2020 WL 7778068, at *5 (D.N.J. Dec. 31, 2020).

Here, Fantini filed his Complaint in New Jersey Superior Court on April 18, 2022, so only acts occurring after April 18, 2020 are cognizable. (*See* ECF No. 1). It is undisputed, however, that the conduct underlying Fantini's hostile work environment claims and Defendants' alleged "favoritism" exhibited for female WestRock employees all occurred before Fantini's last working day at WestRock on October 1, 2019. (Defs.' SOMF, ECF No. 148-2 at ¶ 43). To the extent Fantini

argues that the hostile work environment and favoritism "continued during his leave, including communication from supervisors and [WestRock's] handling of his leave and separation," (Pl.'s Opp. Br., ECF No. 156 at 9), the undisputed facts show otherwise. Critically, Defendants' last communication with Fantini, other than informing him of his termination, which was a discrete act, occurred on April 11, 2020—a week prior to the limitations period commencing. (*See* Pl.'s Ex. A, ECF No. 157-3 at 12). Fantini otherwise identifies no conduct amounting to a hostile work environment or to discriminatory favoritism to extend the statute of limitations beyond April 18, 2020. His NJLAD hostile work environment and favoritism claims are therefore time-barred.

As to Fantini's claim that his termination was discriminatory based on his gender, he fails to set forth sufficient facts to establish a *prima facie* case of reverse gender discrimination under the NJLAD.

Claims of majority-group discriminatory termination under the NJLAD are subject to the familiar *McDonnell Douglas* burden-shifting framework. *Erickson v. Marsh & McLennan Co.*, 569 A.2d 793, 798–99 (N.J. 1990). The plaintiff bears the initial *prima facie* burden. *Id.* at 798. Although this burden is rather modest in the usual case, it is more demanding in "reverse" discrimination cases where, as here, the plaintiff is a member of "a class that has not historically been victimized by discrimination."[7] *Id.* at 799. In that context, a plaintiff must show: (1) "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority"; (2) they were qualified for the job; (3) they were nevertheless

---

[7] The Supreme Court recently decided in *Ames v. Ohio Department of Youth Services* that a "majority group" plaintiff asserting Title VII claims need not satisfy a heightened burden at the *prima facie* stage. 605 U.S. 303, 305 (2025). Although New Jersey courts "have frequently looked" to Title VII "for guidance in developing standards to govern the resolution of [NJ]LAD claims," *Craig v. Suburban Cablevision, Inc.*, 660 A.2d 505, 508 (N.J. 1995), *Ames* did not alter the heightened *prima facie* burden for state law reverse gender discrimination claims under the NJLAD and, as of this date, no New Jersey court has adopted the *Ames* standard.

10

terminated; and (4) the employer subsequently sought similarly qualified individuals for that job. *Id.* (quotations omitted). If a plaintiff meets this *prima facie* burden, the burden then shifts to defendants to offer a legitimate, non-discriminatory reason for the termination. *Id.* at 798–99. Once that is established, the burden is back on the plaintiff to show sufficient facts from which a reasonable jury could find that a defendant's stated reasons for termination are pretextual. *Id.* at 799.

Here, Fantini identifies no evidence creating a genuine dispute of material fact as to any element of a *prima facie* case of reverse gender discrimination. Most notably, he cannot establish the first *prima facie* element because he points to no evidence of "background circumstances" raising even a modest suspicion that WestRock[8] is the "unusual employer" who discriminates against men. Sufficient "background circumstances" supporting an inference of reverse discrimination include evidence that the employer "has some reason or inclination to discriminate invidiously against" the majority group, or otherwise indicating "something 'fishy' about the facts of the case at hand . . . ." *Murphy v. Hous. Auth. & Urb. Redevelopment Agency of City of Atl. City*, 32 F. Supp. 2d 753, 764 (D.N.J. 1999) (evaluating NJLAD and Title VII claims) (quotations omitted), *aff'd*, 208 F.3d 206 (3d Cir. 2000); *see also Bergen Com. Bank v. Sisler*, 704 A.2d 1017, 1024 (N.J. Super. Ct. App. Div. 1998) (adopting these "background circumstances" for an NJLAD

---

[8] The NJLAD claims against the Individual Defendants fail because, although the NJLAD allows for individual liability on an aiding and abetting theory, *see* N.J. STAT. ANN. § 10:5-12(e) ("It shall be unlawful . . . [f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."), the Amended Complaint does not allege such claim, *see Joseph v. N.J. Transit Rail Operations, Inc.*, No. 12-1600, 2013 WL 5676690, at *13 (D.N.J. Oct. 17, 2013) ("Plaintiff's failure to specifically plead a cause of action for 'aiding and abetting' would compel this Court to dismiss any such claim."), *aff'd*, 586 F. App'x 890 (3d Cir. 2014).

reverse age discrimination claim). There is no such evidence here. Thus, Fantini's reverse gender discrimination claims fail at the *prima facie* stage.

Even assuming Fantini could meet his *prima facie* burden, he cannot rebut WestRock's legitimate, non-discriminatory reasons for his termination—the February 11 email which violated WestRock's Workplace Violence Policy, and his refusal to participate in the IME process. *See Patikowski v. St. Peter's Univ. Hosp.*, No. A-5386-18, 2021 WL 806943, at *5, 7 (N.J. Super. Ct. App. Div. Mar. 3, 2021) (affirming summary judgment for employer on age discrimination claim where "defendant had a sufficient basis to terminate plaintiff pursuant to its policy against workplace violence"); *see also Jackson v. Planco*, 431 F. App'x 161, 166 (3d Cir. 2011) (affirming summary judgment for employer on discrimination claims where the plaintiff was plausibly terminated "out of fear he might pose a safety risk" to other employees). To show pretext, "a plaintiff must do more than simply show that the employer's [proffered legitimate, non-discriminatory] reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent." *Viscik v. Fowler Equip. Co. Inc.*, 800 A.2d 826, 833 (N.J. 2002). Fantini argues that the "purported threatening email must be viewed in context" and his "failure to submit to the IME . . . is disputed as being a pretextual excuse to terminate [him] . . . ." (Pl.'s Opp. Br., ECF No. 156 at 13). But, without factual support, these conclusory statements amount to nothing more than "[s]peculations, generalities, and gut feelings" which "do not allow for an inference of discrimination to be drawn . . . ." *Chambers v. Heidelberg USA, Inc.*, No. 04-583, 2006 WL 1281308, at *4 (D.N.J. May 5, 2006). Therefore, even assuming Fantini could satisfy his *prima facie* burden, he fails to present any evidence from which a reasonable jury could find that WestRock's stated reasons for his termination are pretextual.

In sum, Fantini's Title VII claims are barred for failure to exhaust administrative remedies; his NJLAD hostile-work-environment and discriminatory "favoritism" claims are time-barred; and his NJLAD discriminatory termination claim fails because he offers no evidence to satisfy his *prima facie* burden and, even if he could, he fails to set forth sufficient evidence from which a reasonable jury could reject WestRock's stated reasons for his termination as pretextual. Thus, summary judgment on Count II is granted for Defendants and denied for Fantini.

## C. Counts III and IV are Preempted by the New Jersey Workers' Compensation Act ("NJWCA")

Counts III and IV assert claims for workplace negligence and negligent misrepresentation,[9] respectively. (Am. Compl., ECF No. 60 at ¶¶ 54–72). However, the NJWCA provides the exclusive remedy for injuries arising from negligence in the employment context. *See* N.J. STAT. ANN. § 34:15-8; *Millison v. E.I. du Pont de Nemours & Co.*, 501 A.2d 505, 507 (N.J. 1985) (characterizing Section 34:15-8 as an "exclusive-remedy provision"). This is so regardless of the kind of injury alleged. *See Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 954 n.8 (D.N.J. 1991) (noting that "plaintiff cannot pursue *any cause of action based upon negligence* due to the exclusive remedy provision set forth in the New Jersey Workers' Compensation Act[.]" (emphasis added)); *Ruggiero v. Eli Lilly & Co.*, No. 19-16206, 2022 WL 17082498, at *8 (D.N.J. Nov. 18, 2022) ("An employee 'cannot sue his [or her] employer in negligence . . . nor can the employee sue a co-employee,' because all such actions are barred by the NJWCA." (quoting *Wellenheider v. Rader*, 227 A.2d

---

[9] Fantini's negligent misrepresentation claim also fails because the Amended Complaint does not allege *any* misrepresentations made by Defendants. Rather, for the first time in his Opposition Brief, Fantini claims Defendants negligently misrepresented his "job duties, available accommodations, and internal procedures for resolving workplace grievances . . . ." (ECF No. 156 at 21). The Court cannot consider allegations raised for the first time at summary judgment. *Lawshe*, 2010 WL 276232, at *7. Without such allegations, Count IV fails to even state a *prima facie* claim.

329, 333 (N.J. 1967))). Thus, because both Counts III and IV assert negligence claims, they are preempted by the NJWCA.[10]

Defendants' Motion is therefore granted as to Counts III and IV of the Amended Complaint, and Fantini's Cross-Motion as to Count IV is denied.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment, (ECF No. 148), in its entirety and **DENIES** Plaintiff's Cross-Motion for Summary Judgment, (ECF No. 157).

Date: December 19, 2025

*[signature]*
**CHRISTINE P. O'HEARN**
**United States District Judge**

---

[10] Although intentional acts are outside the NJWCA's purview, *see Mull v. Zeta Consumer Prods.*, 823 A.2d 782, 785 (N.J. 2003) (recognizing that the NJWCA "does not capture all forms of conduct" including "intentional wrong[s]"), Fantini does not plead intentional acts in the Amended Complaint, nor are there facts presented creating a triable dispute in that regard.